UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICKY PEREZ, | ) | 1:08-CV-01665 LJO JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| J.D. HARTLEY, | ) | |
| | ) | |
| Respondent. | ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| | ) | DAYS |

Petitioner Ricky Perez ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to Petitioner's entry of a plea of guilty to charges of second degree murder with a firearm enhancement in 1982. The trial court sentenced Petitioner to a term of fifteen years to life in prison. (Pet. at 2; Answer at 1.)

Petitioner is not challenging his conviction in this instant action; rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), whom he appeared before in November 2006. (Pet. at 2.) Petitioner contends that the Board violated his constitutional rights when they denied him parole. (Pet. at 5-6.)

On June 19, 2007, Petitioner filed a petition for writ of habeas corpus with the Santa Clara County Superior Court challenging the Board's denial of parole. (*See* Answer Ex. 1.) The Superior Court issued a reasoned opinion denying the petition on August 27, 2007. (*See* Pet. Ex. C.)

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (Answer Exs. 3, 5.) The California Court of Appeal and

Supreme Court issued summary denials of the petitions.[1]  (*See* Pet. Exs. D, E.)

On October 23, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.[2]

Respondent filed a response to the petition on June 24, 2009.  Petitioner filed a traverse to the reply on July 15, 2009.

## FACTUAL BACKGROUND

The facts of the commitment offense were considered by the Board in determining whether Petitioner was suitable for parole and are thus relevant to the Court's inquiry into whether the State court's decision upholding the Board's denial of parole was objectively unreasonable.  *See* Cal. Code Regs., tit. 15, § 2402(c)(1).  The Board incorporated into the record a summary of the offense which had been taken from the probation officer's report, stating:

> Perez and the victim were seen by several witnesses and a neighbor to be involved in an argument.  Perez was seen hitting the victim several times and dragging her to the side of her home.  Contact was made with the victim's daughter, who upon arriving home, found her mother's body lying next to the driveway.  The daughter stated she observed a male individual whom she recognized as Ricky Perez, leaving the area.  During the course of the investigation, Perez arrived at the scene.  He had what appeared to be recent lacerations on his face and hands.  When the officers questioned him, they found several discrepancies in his statement.  The officers arrested Perez and charged him with the offense.  Perez admitted engaging in a verbal argument with the victim earlier in the evening.  However, he denied killing her.

(Pet. Ex. A, Transcript of Parole Hearing, at 8.)

Petitioner admitted that the probation officer report was accurate.  (Id.)  Petitioner's attorney at the hearing noted that Petitioner admitted his commission of the crime in 1992.  (Id. at 9.) Petitioner attributed his actions to his use of drugs.  (Id.)  Petitioner was eighteen years old at the time of the crime.  (Id. at 12.)

## DISCUSSION

**I.    Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

---

[1] Respondent admits that Petitioner has exhausted his state court remedies.  (Answer at 2.)

[2] Respondent admits that the petition was timely filed.  (Answer at 2.)

1  U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by
2  the United States Constitution and Petitioner is currently incarcerated at Avenal State Prison, which
3  is located in Kings County.  (Pet. at 2.)  As Kings County falls within this judicial district, 28 U.S.C.
4  § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus.  *See* 28
5  U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the
6  district court where the petitioner is currently in custody or the district court in which a State court
7  convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

8  **II.**     **ADEPA Standard of Review**

9          On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of
10 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's
11 enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499
12 (9th Cir. 1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other*
13 *grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's
14 enactment)).  The instant petition was filed in 2008 and is consequently governed by the provisions
15 of the AEDPA.  *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted
16 only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or
17 involved an unreasonable application of, clearly established Federal law, as determined by the
18 Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28
19 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555
20 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.
21         Title 28 of the United States Code, section 2254 remains the exclusive vehicle for
22 Petitioner's habeas petition as Petitioner is in the custody of the California Department of
23 Corrections and Rehabilitation pursuant to a state court judgment.  *See Sass v. California Board of*
24 *Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*,
25 *Hayward*, 603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes
26 'clearly established Federal law, as determined by the Supreme Court of the United States.'"
27 *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly
28 established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the

Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining

whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Santa Clara County Superior Court, the California Court of Appeal, and the California Supreme Court reached the merits of Petitioner's claims. As both the California Court of Appeal and the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the Santa Clara Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.  Review of Petitioner's Claims

The petition for writ of habeas corpus sets forth four grounds for relief: (1) Petitioner's right to due process of the law was violated as the Board's denial was not supported by any evidence of current dangerousness; (2) the Board mischaracterized Petitioner's psychological evaluation; (3) the Board violated Petitioner's due process rights when they ignored evidence of unsuitability; and (4) Petitioner has spent an excess of thirteen years in prison and should be granted release without any parole.

\\\
\\\
\\\

### A.     Ground One: Due Process in Denial of Parole

The Court analyzes a claim that a petitioner's due process rights have been violated in two steps. "'[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). Respondent argues that Petitioner does not have a federally protected liberty interest in parole. The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to be release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." *Id*. at 559. The *Hayward* court's finding, that there exists no free standing federal due process right to parole or right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As later noted by the Ninth Circuit, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." *Pearson v. Muntz*, __ F.3d __, 2010 WL 2108964, * 2 (9th Cir. 2010) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). The *Pearson* court found that, "*Hayward* necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." *Id.*

As noted by the Ninth Circuit in *Hayward*, the logical next question is whether California's parole scheme gives rise to a liberty interested enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Pearson*, __ F.3d __, 2010 WL 2108964, * 4 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 2010 WL 2267018, * 6-7 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the

parole system of that state").

Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted). As the Ninth Circuit recently observed in *Cooke*:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

*Cooke*, 2010 WL 2267018, *7 (quoting *In re Lawrence*, 44 Cal.4th 1181, 1210, 1213 (2008)); *see also* Cal. Code Regs., tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole). The California Supreme Court in *Lawrence* held that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." *Id*. at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability"). Thus, the dispositive inquiry now before this Court is "'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" *Cooke*, 2010 WL 22670108, *7 (quoting *In re Lawrence*, 44 Cal.4th at 1221) (emphasis in original).

### 1. State Court Decision

Here, the Superior Court of California, Santa Clara County, was the last State court to have issued a reasoned opinion in Petitioner's case. In that decision, the Superior Court stated, "[i]n this case, because there is 'some evidence' that the motive for the crime was inexplicable or very trivial in relation to the offense, there is unsuitability under the 'detailed standards.'" (Pet. Ex. C) (citing *In

*re Dannenberg*, 34 Cal.4th 1061, 1096 n. 16 (2005)). The Court finds this decision to be an objectively unreasonable application of the California some evidence standard. As the Ninth Circuit noted, "courts in this circuit...need only decide whether the California judicial decision approving the governor's [or Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63. As the California Supreme Court rejected the very test applied by the Santa Clara Superior Court, the Court finds the Superior Court's decision to be an objectively unreasonable application of California's some evidence standard. *See In re Lawrence*, 44 Cal.4th at 1210 (concluding "that current dangerousness (rather than the mere presence of a statutory unsuitability factor) is the focus of the parole decision").

### 2.  *Parole Board Decision*[3]

The finding that the State court's decision was objectively unreasonable does not end a federal habeas court's inquiry. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3) in noting that a federal habeas court's finding that state court's decision is contrary to established federal law does not end that court's inquiry). A federal habeas court's "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws ... of the United States.'" *Id*. Thus, Petitioner is only entitled to habeas corpus relief if his due process rights were violated by the lack of evidence to support the Board's denial of parole.

The Board noted four factors in denying Petitioner parole, relying on: (1) the circumstances of the commitment offense; (2) Petitioner's escalating pattern of criminal conduct; (3) Petitioner had not yet sufficiently participated or benefitted from self-help and therapy; and (4) Petitioner's disciplinary record while incarcerated. (Pet. Ex. A at 45-46.) The Court's review of the record reveals that these factors are not probative to the central issue of current dangerousness. *See Cooke*, 2010 WL 2267018, *7.

---

[3] In Ground Three, Petitioner contends that the Board violated his constitutional rights by ignoring evidence of suitability. As the crux of this argument centers on whether there was some evidence of current dangerousness, the Court incorporates this ground for relief in this section.

The Board's finding that Petitioner had not yet sufficiently participated or benefitted from self-help and therapy is wholly without evidentiary support and contradicted by the Board's own statements. During the hearing, the Board stated, "for the record, you have received *an extensive amount of self-help, has* [sic] *been involved in an extensive amount of self-help and therapy*." (Pet. Ex. A at 23) (emphasis added). The Board noted that Petitioner had been involved with Alcoholics Anonymous for at least 55 months, involved in relapse prevention, anger management, life management, citizenship, self-worth, anger management, coping skills, quiet moments." (Id. at 23-24.) The Board's contradiction extends to the decision portion of the hearing when the Board found that "[t]he inmate has not yet sufficiently participated and benefited [sic] from self-help and therapy programs," but then commended Petitioner for "extensive participation in A,A., [including] full knowledge of the 12 Steps." (Id. at 46-47.) The Board's finding, that Petitioner's participation in self-help and therapy extensive but not sufficient, is both contradictory and illusory.

Additionally, the Court finds the Board's reliance on Petitioner's escalating pattern of criminal conduct illusory. As noted by the Board, Petitioner had only one other incident of criminal misconduct prior to the commitment offense and that incident was an arrest for drunk driving. (Id. at 27.) First, the Court notes that California regulations list previous record of violence as an unsuitability factor. Cal. Code Regs., tit. 15, § 2402(c)(2) (stating, "[t]he prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age" as a circumstance tending to show unsuitability). By the regulation's own statement, Petitioner's drunk driving arrest would not constitute a record of violence as there was no actual victim. Additionally, the drunk driving arrest occurred prior to Petitioner's commitment offense which means that twenty-four years had lapsed between the drunk driving arrest and the parole hearing. In light of Petitioner's participation in Alcoholics Anonymous, Petitioner's drunk driving incident from almost a quarter of a century ago does not constitute evidence of Petitioner's current dangerousness.

\\\
\\\
\\\

1    Likewise, the Court does not find that Petitioner's disciplinary infractions are probative.  In
2 *Cooke*, the Ninth Circuit found that two minor non violent disciplinary infractions that occurred
3 nearly a decade prior to the parole hearing could not reasonably be viewed as evidence that the
4 habeas petitioner was a current risk to public safety.  *Cooke*, 2010 WL 2267018, *8.  Here, the Board
5 relied on six CDC 128s,[4] the most recent having occurred in 1990, and one CDC 115,[5] which
6 occurred in 1988.  Thus, the disciplinary infractions the Board utilized for current dangerousness
7 occurred sixteen years prior to the hearing.  In light of the fact that Petitioner was discipline free for
8 sixteen years, the Court finds that those infractions do not provide evidence of Petitioner's current
9 dangerousness.

10   Similarly, the Court finds that the Board's reliance on the commitment offense is also
11 misplaced as the identified facts of the crime do not evidence current dangerousness.  *In re*
12 *Lawrence*, 44 Cal.4th at 1221 (stating "the relevant inquiry for a reviewing court is not merely
13 whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the
14 identified facts are probative to the central issue of current dangerousness when considered in light
15 of the full record").  The commitment offense occurred in 1982; thus, twenty-four years had passed
16 from the time Petitioner committed the crime to when the Board found the circumstances of that
17 crime evidenced Petitioner's current dangerousness.  As the California Supreme Court noted:

> although the Board and the Governor may rely upon the aggravated circumstances of
> the commitment offense as a basis for a decision denying parole, the aggravated
> nature of the crime does not in and of itself provide some evidence of *current*
> dangerousness to the public unless the record also establishes that something in the
> prisoner's pre- or post-incarceration history, or his or her current demeanor and mental
> state, indicates that the implications regarding the prisoner's dangerousness that derive
> from his or her commission of the commitment offense remain probative to the
> statutory determination of a continuing threat to public safety.

*In re Lawrence*, 44 Cal.4th at 1214 (emphasis in original) (cited in *Cooke*, 2010 WL 22670128, *7).
The *Lawrence* court further held that even where the commitment offense was particularly egregious,
reliance on this immutable factor would violate a petitioner's due process rights under the

---

[4] A CDC 128 documents incidents of minor misconduct. *See* Cal.Code Regs., tit. 15, § 3312(a)(2); *In re Gray*, 151 Cal.App.4th 379, 389 (2007).

[5] A CDC 115 documents misconduct believed to be a violation of law or otherwise not minor in nature. *See* Cal.Code Regs., tit. 15, § 3312(a)(3); *In re Gray*, 151 Cal.App.4th at 389.

1  regulations and statutes governing parole suitability in California where:

2  evidence of the inmate's rehabilitation and suitability for parole under the governing
statutes and regulations is overwhelming, the only evidence related to unsuitability is
3  the gravity of the commitment offense, and that offense is both temporally remote and
mitigated by circumstances indicating the conduct is unlikely to recur, the immutable
4  circumstance that the commitment offense involved aggravated conduct does not
provide 'some evidence' *inevitably* supporting the ultimate decision that the inmate
5  remains a threat to public safety.

6  *In re Lawrence*, 44 Cal.4th at 1191 (emphasis in original).

7        In *Lawrence*, the California Supreme Court found that a commitment offense occurring over

8  thirty years prior to the Governor's denial of parole was no longer probative of the petitioner's

9  current dangerousness. The *Lawrence* court found that the intervening twenty-four years in which

10  petitioner, now age sixty-one, had rendered "the unchanging factor of the gravity of petitioner's

11  commitment offense" no longer probative of current dangerousness and therefore could not

12  constitute some evidence. *Id*. at 1226. Similarly, the Court finds that the intervening twenty-four

13  years between the circumstances of the commitment offense and the parole hearing as well as

14  Petitioner's extensive rehabilitative efforts have rendered the circumstances of the commitment

15  offense no longer probative of Petitioner's current dangerousness.

16        In sum, the circumstances of the commitment offense "cannot, standing alone, constitute the

17  requisite evidence of current dangerousness," *Cooke*, 2010 WL 2267018, *9, as "there must be more

18  than the crime or its circumstances alone to justify the Board's or the Governor's finding of current

19  dangerousness," *Cooke*, 2010 WL 2267018, *7. Here, the Court finds the record devoid of such

20  evidence. Thus, the Court finds that Petitioner's due process rights were violated by the Board's

21  denial of parole and Petitioner is entitled to habeas corpus relief on this ground.

22        **B.**    *Ground Two: Board's Mischaracterization of Psychological Evaluation*

23        Petitioner contends in his second ground for relief, that the Board mischaracterized his

24  psychological evaluation and relied on the prosecutor's opposition in denying parole and therefore

25  violated his constitutional rights. The Court notes that Petitioner is mistaken that Board found the

26  psychological evaluation unfavorable or that the Board relied on the evaluation as evidence against

27  suitability. Additionally, as the Court has found that there was not some evidence supporting current

28  dangerousness, the Court finds it unnecessary to address the Board's mistaken reliance on the

1 District Attorney's opposition to parole.

### C. Ground Four: Appropriate Remedy

Petitioner argues that he is entitled to release without any parole restraints. (Pet. at 6.) Petitioner's argument is based on the base term of imprisonment (228 months) that had been set by the Board at a 2004 hearing, during which Petitioner had been found suitable for parole. Petitioner alleges that as of the time he filed his habeas petition in 2008, he had served more than twenty four years (288 months) in prison and received eight years (96 months) of good time credits. Thus, Petitioner argues that he has served thirteen years in excess of his base term and should be released without parole constraints. Respondent contends that the appropriate remedy for a violation of Petitioner's due process right is a new review by the Board, citing to *Benny v. United States Parole Commission*, 295 F.3d 977, 984-85 (9th Cir. 2002) in support of this contention. The Court finds both arguments to be erroneous.

"[F]ederal habeas courts have 'broad discretion in conditioning a judgment granting habeas relief' and in 'dipos[ing] of habeas corpus matters 'as law and justice require.'" *Milot v. Haws*, 628 F.Supp.2d 1152, 1156 (C.D. Cal. 2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)); *see Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (stating that federal courts "have a fair amount of flexibility in fashioning specific habeas relief"); *see also Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (noting that federal habeas court is vested with the largest power to control and direct the form of judgment to be entered). Consequently, several district courts in this circuit have explicitly rejected Respondent's argument and the application of the *Benny* case to remedy denials of parole by the Board. *See*, e.g., *Milot*, 628 F.Supp.2d at 1155-1156 (rejected the assertion that the only remedy available to a habeas petition challenging the denial of parole by the Board was a new parole consideration hearing and noting that California courts have rejected the same argument); *Ledesma v. Marshall*, 658 F.Supp.2d 1155, 1187-1188 (E.D. Cal. 2009) (stating "the *Benny* case involved delay in holding a revocation hearing for a federal parolee rather than an evidentiary challenge to denial of parole under California law. Ordering the BPH to re-assess the petitioner's current dangerousness based on the same evidence this federal habeas court has deemed insufficient to sustain the unsuitability finding would be a futile endeavor"); *Lorsno v. Ornoski*, 2009 WL

4259642, *2 (N.D. Cal. 2009) (stating, "[b]oth state and federal courts have found futility in remanding a parole case for re-review by the parole board after a court sitting in habeas has found the evidence insufficient to sustain an unsuitability finding," and noting that, "*Benny* does not address the remedy a federal court may provide after granting a habeas petition challenging the denial of parole").

Petitioner's argument, that the Court impose a base term that a previous Board has determined, is likewise unavailing. The Board in 2004 had found Petitioner suitable for parole and thus had calculated a base term for the offense and set a parole release date. *See* Cal. Code Regs., tit. 15, § 2282(a), (d). Initially, the Court notes that Petitioner has cited no authority that suggests that the 2004 determination of a base term is binding on subsequent Boards. In light of this absence of authority, the Court declines Petitioner's requests to reimpose this base term. Likewise, the Court rejects Petitioner's argument that he should have the time he has served in excess of that base term be credited towards his parole period. While a prisoner who has served time in excess of his base term is entitled to immediate release from prison pursuant to California regulations, the California courts have found no such entitlement for a prisoner to have that additional time credited against the parole period. *See In re Bush*, 161 Cal.App.4th 133, 142-43 (2008).

However, Petitioner may receive credit towards his parole period. The Court notes that crediting Petitioner for the time he has served in excess of his base term toward his parole period is markedly distinct from crediting Petitioner for the time he has served in excess of when his constitutional rights were violated. This distinction was noted by the California Court of Appeal in *Bush*. There, the California Court of Appeal distinguished its decision to deny credit for time served in excess of the base term from a federal habeas court's determination that the Board's denial of parole was unconstitutional, as the latter was a case where "the prisoner was not lawfully in custody during the nine years following his original parole date because the rescission of that date was not supported by 'some evidence.' [citation] *The prisoner was therefore entitled to a credit of this unlawful custody time against his three-year parole period*." *Id.* at 144-45 (emphasis added). Thus, the Court recommends that Petitioner only be credited for the time he has unlawfully served; namely,

the time he has served as a result of the violation of his constitutional rights.

## RECOMMENDATION

Accordingly, in accordance with the above, IT IS HEREBY RECOMMEND that:

1. The petition for writ of habeas corpus be GRANTED;
2. The Clerk of Court be directed to enter judgement for Petitioner; and
3. Judgment be entered granting a writ of habeas corpus as follows: The Board shall find Petitioner suitable for parole at a hearing to be held within 30 days of the order adopting this decision, unless new evidence of his conduct in prison or change in mental status subsequent to the November 2006 parole hearing is introduced and is sufficient to support a finding that Petitioner currently poses an unreasonable risk of danger to society if released on parole.  In the absence of any such new evidence showing Petitioner's current dangerousness, the Board shall calculate a prison term and release date for Petitioner in accordance with California law.  Further, if the release date already has passed, Respondent shall, within ten (10) days of the Board's hearing, release Petitioner from custody.  With respect to his presumptive period of parole, Petitioner is to be credited for any time that has lapsed since the release date calculated by the Board or when a finding of suitability at the November 2006 parole consideration hearing would have become final pursuant to California Penal Code sections 3041(b) and 3041.2(a)), whichever is later.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

1 parties are advised that failure to file objections within the specified time may waive the right to
2 appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3 IT IS SO ORDERED.
4 **Dated:    June 18, 2010**           /s/ **John M. Dixon**
                                        UNITED STATES MAGISTRATE JUDGE